IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVEN CASAUS,

    Petitioner,

v.                                                                                            Civ. No. 20-1269 WJ/KK

TIMOTHY HATCH,

    Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

In 2015, Petitioner Steven Casaus was charged in the Second Judicial District Court of the State of New Mexico with multiple crimes related to the death of his nine-year-old stepson, Omaree Varela. A jury convicted Mr. Casaus of five charges, and he was sentenced to a total term of 35 years of imprisonment. (Doc. 38-1 at 79–82.) On direct appeal, one conviction was reversed, and the others affirmed. (*Id.* at 239-269.) Mr. Casaus' state habeas petition seeking reversal of the four remaining convictions was unsuccessful. (*Id*. at 543-45, 557.) He then filed his *pro se* "Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by a Person in State Custody" (Doc. 1) (the "Petition") in this Court seeking reversal of the remaining convictions. The Court determined that Mr. Casaus' petition contained both exhausted and unexhausted claims, (Doc. 33), and, pursuant to the Court's order, Mr. Casaus opted to dismiss the unexhausted claims in lieu of having his petition dismissed without prejudice. (*See* Doc. 34.)

Now before the Court are the remaining exhausted claims from Mr. Casaus' Petition. (*See* Docs. 1, 32, 33.) Chief United States District Judge William Johnson referred this case to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 7.) Having carefully considered the parties'

submissions, the record, and the relevant law, I recommend that the Court DENY Mr. Casaus'

Petition and DISMISS this matter with prejudice.

## I. BACKGROUND

### A. Factual Background

The following background information is derived from the evidence presented at Mr. Casaus' trial. At approximately 4:00 or 4:30 p.m. on December 27, 2013, police and paramedics responding to a call of an unconscious nine-year-old boy at 4909 Comanche Road, Northeast, in Albuquerque found Omaree lying on his back at the foot of his parents' bed. (Doc. 39-3 at 50-54, 74, 115.) Mr. Casaus was in the residence when first responders arrived, as were Omaree's younger siblings, N.V. and E.V., and Omaree's mother, Synthia Varela. (*Id.* at 53-54, 62-63; *see* Doc. 39-4 at 80.) The first responders testified that Omaree had no signs of life when they arrived. (Doc. 39-3 at 54-55, 118.) An ambulance transported Omaree to the hospital where doctors tried but were unable to revive him. (*Id.* at 93-95.) A forensic pathologist, Dr. Odey Ukpo, determined that Omaree's cause of death was blunt trauma, and the manner was homicide. (Doc. 39-5 at 51, 62.)

Detective Michelle English, who interviewed Mr. Casaus after Omaree's death, testified that Mr. Casaus gave varying explanations of what happened to Omaree. In one version, Mr. Casaus had been out of the house when he received a call from Ms. Varela that Omaree was unresponsive. (Doc. 39-4 at 82-83.) Upon returning home no later than 3:00 p.m., he found Omaree on the floor next to a bouncing horse from which Omaree supposedly fell. (*Id.* at 83.) Mr. Casaus then attempted to revive Omaree by putting him in a cold shower, attempting CPR, and administering oxygen from Ms. Varela's oxygen tank before telling her to call 911. (*Id.* at 83-88.)

In another version, Mr. Casaus was at home in the bathroom at around 2:00 or 2:30 p.m. when he heard Omaree and Ms. Varela yelling. (*Id.* at 90-91.) Upon exiting the bathroom, he saw Ms. Varela yelling and on top of Omaree, who was unresponsive. (*Id.* at 91.) Mr. Casaus told Detective English that he first believed that Omaree was faking his condition and thought he could "bring [Omaree] back" by attempting CPR, placing him in a cold shower, and administering oxygen. (*Id.* at 92.) He also stated that he told Ms. Varela to call 911, but that she instead called Mr. Casaus' niece to come remove Omaree's siblings from the residence. (*Id.*; *see* Doc. 39-3 at 55, 62-63; Doc. 39-4 at 87.)

In a third version, Mr. Casaus admitted that he was using heroin in the bathroom at 12:00 or 12:30 when he heard Ms. Varela yelling at Omaree followed by "tumbles and stumbles." (Doc. 39-4 at 94.) After leaving the bathroom, Mr. Casaus found Omaree unresponsive on the floor. (*Id.* at 94-95.) Mr. Casaus explained that he did not call 911 himself because he was "panicked, paranoid, and [Ms. Varela] wanted her other two children to be removed from the household" before a call was placed. (*Id.* at 95-96.)

N.V. testified that, on the day of the incident, she was in her room when she heard Omaree screaming in the living room. (Doc. 39-5 at 16-17.) When she went to the living room, she saw Mr. Casaus and Ms. Varela slapping, punching, and kicking Omaree. (*Id.*) N.V. stated that nobody instructed her not to discuss what happened that day, but that she sometimes felt scared of Mr. Casaus. (*Id.* at 37-38.) Detective English testified that although Mr. Casaus initially denied coaching N.V. and E.V. about discussing the incident, he later admitted to Detective English that he told them "[d]on't say nothing" about what happened to Omaree and that "[e]verything's going to be okay." (Doc. 39-4 at 93-94.)

3

Medical personnel who treated Omaree noted both the unusual cleanliness of his body and several specific injuries. One trauma nurse testified that it stood out to her that Omaree "was really clean" when he arrived at the hospital and noted that he did not have "blood on him anywhere[ ]" despite having head lacerations and other injuries. (Doc. 39-4 at 48.) Dr. Ukpo observed "multiple injuries ... from head to toe[,]" (Doc. 39-5 at 46), and specifically identified three orange, waxy, half-centimeter marks on Omaree's mid chest that he later determined to be thermal injuries. (Id. at 48-49.) A paramedic who examined these marks described them as resembling cigarette burns. (Doc. 39-3 at 140.)

Detective English testified that when she asked Mr. Casaus about those injuries, he stated that Omaree had been running down a dark hallway wearing a low-cut shirt a few days prior when he ran into Mr. Casaus' lit cigarette, which left "one little red mark." (Doc. 39-4 at 89.) Dr. Ukpo cast doubt on this explanation during his testimony, opining that he would expect to see a single burn mark on Omaree's body in the scenario Mr. Casaus described. (Doc. 39-5 at 54.)

## B. Procedural Background

On September 15, 2015, a jury found Mr. Casaus guilty of (1) recklessly causing or permitting child abuse resulting in death based on medical neglect; (2) recklessly causing or permitting child abuse not resulting in death or great bodily harm based on cigarette burns; (3) tampering with evidence for cleaning Omaree's body; and (4) two counts of bribery of Omaree's siblings. (Doc. 38-1 at 25–33, 79–82); *New Mexico v. Casaus*, Case No. D-202-CR-2014-1975; *New Mexico v. Casaus*, Case No. D-202-CR-2015-1416.[1] The state district court sentenced Mr.

---

[1] These cases were joined for trial. (Doc. 38-1 at 242.)

Casaus to a total term of 35 years' imprisonment, 5 years suspended, for an actual term of 30 years in the custody of the New Mexico Department of Corrections. (Doc. 38-1 at 79–82.)[2] Represented by counsel, Mr. Casaus appealed to the New Mexico Court of Appeals, arguing that there was insufficient evidence to support his convictions. (Doc. 38-1 at 93–237, 251–268.) He also argued that the state district court erred by denying his motion for a continuance and his request for a jury instruction on causation, as well as by denying admission of portions of his statement to law enforcement. (*Id*. at 243–250.) Finally, he argued that these errors cumulatively rendered his trial unfair. (*Id*. at 268.)

The New Mexico Court of Appeals vacated the conviction for child abuse resulting in death based on medical neglect for insufficient evidence. (Doc. 38-1 at 261.) It held that there was sufficient evidence supporting the other four convictions, that the district court had not erred in management of the trial, admission of evidence, or in instructing the jury, and that those alleged errors did not cumulatively render the trial unfair. (*Id*. at 243-268.)

Mr. Casaus petitioned the New Mexico Supreme Court for a writ of certiorari, arguing that the New Mexico Court of Appeals erred in its evaluation of the evidence supporting the charges for tampering with evidence, child abuse not resulting in death, and bribery of a witness. (Doc. 38-1 at 270–283.) He also reiterated his argument that the district court erred by refusing to grant a continuance and by denying admission of portions of Mr. Casaus' statement to law enforcement. (*Id*.) The New Mexico Supreme Court denied the petition for writ of certiorari (*Id.* at 300), and, on March 27, 2020, the state district court entered an amended judgment and

---

[2] Presently, Mr. Casaus is an inmate at the Northeast New Mexico Detention Facility in Clayton, New Mexico. (Doc. 1 at 2); *see* New Mexico Corrections Department Offender Search, https://www.cd.nm.gov/offender-search/, accessed February 27, 2025.

sentence in accordance with the New Mexico Court of Appeals' reversal of the conviction for child abuse based on medical neglect. (*Id*. at 309–311.)

Mr. Casaus, acting *pro se*, then filed a state habeas petition seeking to overturn the four remaining convictions (Doc. 38-1 at 312-16.) The state district court denied that petition because Mr. Casaus' arguments were "based on the same arguments and facts presented in his direct appeal." (*Id.* at 543-545.) The New Mexico Supreme Court denied certiorari review. (*Id.* at 557.) On December 7, 2020, Mr. Casaus, acting *pro se*, filed the present Petition, arguing that the Court should overturn his convictions because (1) there was insufficient evidence to support the convictions; [3] (2) the State manipulated Omaree's sibling to tell a therapist that she witnessed Mr. Casaus kick Omaree; (3) the state trial court abused its discretion in denying Mr. Casaus' motion for an independent psychological evaluation of Omaree's sibling; and (4) the cumulative effect of the alleged violations combined to deny Mr. Casaus a fair trial. (Doc. 1 at 7-16; *see* 32 at 8.) On August 9, 2021, Respondent filed a limited answer in which he contended that Mr. Casaus' Petition included both exhausted and unexhausted claims and that some of those claims were procedurally barred. (*See* Doc. 11 at 8.) On November 15, 2023, the Court determined that Mr. Casaus' insufficient evidence claims were exhausted, while the remaining claims were unexhausted. (Doc. 33 at 1-2.) The Court then gave Mr. Casaus thirty days to voluntarily dismiss the unexhausted claims before it dismissed his Petition with prejudice. (*Id.* at 2.) On November 20, 2023, Mr. Casaus dismissed the unexhausted claims, (Doc. 34), after which the Court ordered

---

[3] While Mr. Casaus' Petition only specifically argued that there was insufficient evidence to support his tampering conviction, stating that "nowhere did [he] attempt to hide, change, or re-direct any of his actions pertaining to the well[-]being of Omaree," (Doc. 1 at 8, 14), he also made broader claims about all his convictions, stating that he is "being held accountable for crimes not committed" and that there was "no legitimate evidence" that he was involved in any criminal activity. (*Id.* at 8, 9.) Construing these statements liberally, the Court found that his Petition challenged the evidentiary basis for his other convictions as well. (Doc. 33 at 1-2; *see* Doc. 32 at 7 n.4.)

Respondent to file a supplemental answer. (Doc. 36.) Respondent filed his supplemental answer on March 20, 2024, arguing that Mr. Casaus' Petition should be denied because substantial evidence supported the four remaining convictions. (Doc. 38.)

Prior to the filing of the supplemental answer, Mr. Casaus filed a motion for an extension of time. (Doc. 37.) The Court construed this motion as a motion for an extension of time to file a reply to the supplemental answer, and on the day Respondent filed his answer, the Court granted Mr. Casaus ninety days to file his reply. (Doc. 40.) The Court further advised that if Mr. Casaus chose "not to file a reply to the Supplemental Answer within the deadline … the Court [would] consider the Petition and Respondent's Supplemental Answer to it."[4] (*Id.*) Mr. Casaus did not file a reply, so I will therefore consider the Petition and Respondent's supplemental answer.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court may only grant a state prisoner's petition for a writ of habeas corpus when the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In general, the prisoner must also have exhausted his state court remedies. 28 U.S.C. § 2254(b)(1). When the prisoner's claims have been adjudicated on the merits in state court, a Section 2254 petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [United States Supreme Court] cases,

---

[4] For nearly two years, Mr. Casaus sought and was granted extensions to either file a reply to Respondent's limited answer or an amended petition but failed to do so. (*See* Doc. 32 at 4-5.)

or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [United States Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where … the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Woods v. Donald*, 575 U.S. 312, 316 (2015) ("[A]n unreasonable application of [United States Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quotation marks omitted). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (brackets omitted).

Federal review of a state court's determination that a claim lacks merit is "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)). "[F]ederal habeas relief [is precluded] so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*, 541 U.S. at 664.). The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98. Unless the state court indicated that it did not

consider an issue on the merits, even a summary denial will be deemed "on the merits" for purposes of Section 2254 review. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004); *see Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.").

Review under Section 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180-81, 185 n.7; *Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012). Such review must be "highly deferential," and the petitioner bears the burden of proof. *Cullen*, 563 U.S. at 181; *Woodford,* 537 U.S. at 24-25.

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be…. [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

*Harrington*, 562 U.S. at 102-03 (citation and quotation marks omitted).

In Section 2254 proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence."). A petitioner is entitled to an evidentiary hearing when "his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005).

9

However, factual allegations must be "specific and particularized, not general or conclusory." *Id.* at 859. "Moreover, an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Id.* at 859.

> [B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. In practical effect ... this means that when the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing.

*Cullen*, 563 U.S. at 183 (citations and quotation marks omitted). I will consider Mr. Casaus' claims in light of the foregoing standards.

### III. ANALYSIS

Mr. Casaus argues that there was insufficient evidence to support his remaining convictions. (Doc. 1 at 8, 9, 14.) This argument was rejected by the New Mexico Court of Appeals on direct appeal. (Doc. 38-1 at 243-268.) In its decision, the New Mexico Court of Appeals viewed "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." (*Id.* at 251.) Applying this standard, it noted that "the jury [was] free to reject [Mr. Casaus'] version of the facts" (*id.*) and held that the evidence adduced at trial was sufficient to support the remaining convictions. (*Id.* at 252-69.)

Under federal law, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). On federal habeas review, a "state-court decision rejecting a sufficiency challenge may" be overturned only if the "decision was 'objectively unreasonable.'"

*Parker*, 567 U.S. at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2, (2011)). Hence, the question before the Court is whether the New Mexico Court of Appeals "reasonably decided that [*any*] 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Torres v. Lytle*, 461 F.3d 1303, 1313 (10th Cir. 2006) (quoting *Jackson*, 443 U.S. at 319)).

Reviewing the evidence adduced at trial, I find there was sufficient evidence for a rational jury to convict Mr. Casaus on each remaining conviction challenged in the Petition. The state trial court instructed the jury that the remaining child abuse charge required proof that Mr. Casaus, as Omaree's custodian or guardian, recklessly disregarded Omaree's health or safety by burning him on the chest, causing Omaree to be "tortured or cruelly confined or cruelly punished." (Doc. 38-1 at 59.) Evidence showed that Omaree had three distinctive orange, waxy, half-centimeter marks on his chest that Dr. Ukpo identified as thermal injuries and a paramedic testified resembled cigarette burns. (Doc. 39-5 at 48-49; Doc. 39-3 at 140.) While Mr. Casaus claimed these resulted from Omaree accidentally running into his lit cigarette in a dark hallway, Dr. Ukpo testified this explanation was inconsistent with finding multiple burns, as Mr. Casaus' scenario would likely result in only a single mark. (Doc. 39-4 at 89; Doc. 39-5 at 54.) Viewing the evidence in the light most favorable to the prosecution, a rational jury could infer that Mr. Casaus deliberately burned Omaree multiple times—first, from Mr. Casaus' admission that he burned Omaree once with a cigarette, second from Dr. Ukpo's testimony that multiple burns could not have resulted from the single contact Mr. Casaus admitted to, and third, from the wounds' identical characteristics as cigarette-sized thermal injuries. These multiple, similar burns in the same area, contradicting Mr. Casaus' explanation, would allow a rational trier of fact

to find that he intentionally inflicted them as a form of cruel punishment. *See Parker*, 567 U.S. at 43.

To establish tampering with evidence, the prosecution needed to prove that Mr. Casaus cleaned Omaree's body to prevent his or Ms. Varela's "apprehension, prosecution[,] or conviction." (Doc. 38-1 at 60.) At trial, a trauma nurse testified that Omaree's body was notably clean and free of blood when he arrived at the hospital despite his severe injuries. (Doc. 39-4 at 48.) This evidence, combined with Mr. Casaus' admission that he had placed Omaree in the shower and his delay in seeking medical attention, supports that Mr. Casaus cleaned Omaree's body to conceal evidence of Omaree's injuries. (Doc. 39-4 at 83; *see* 39-3 at 50, 115; Doc. 39-4 at 82-96.) Drawing all reasonable inferences in favor of the verdict, a rational trier of fact could conclude that Mr. Casaus deliberately cleaned Omaree's body to hide evidence of his or Ms. Varela's crimes. *See Jackson*, 443 U.S. at 319.

For the bribery charges, the prosecution had to demonstrate that Mr. Casaus knowingly intimidated N.V. and E.V. "with the intent to keep [them] from truthfully reporting to a law enforcement officer or any agency that is responsible for enforcing criminal laws information relating to[] the commission or possible commission of Child Abuse or Tampering with Evidence." (Doc. 38-1 at 61, 62.) While N.V. testified that no one instructed her not to discuss what happened to Omaree, she also stated that Mr. Casaus sometimes scared her. (Doc. 39-5 at 37-38.) More significantly, Detective English testified that Mr. Casaus, who initially denied coaching the children, admitted telling N.V. and E.V. "[d]on't say nothing" about what happened to Omaree and that "[e]verything's going to be okay." (Doc. 39-4 at 93-94.) Though N.V.'s testimony contradicted the bribery charges,

12

the jury was entitled to credit Mr. Casaus' own admission along with N.V.'s testimony about being scared of him. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Mr. Casaus intimidated both children to prevent them from reporting his crimes. *See Parker*, 567 U.S. at 43; *Jackson*, 443 U.S. at 319.

In sum, viewing the evidence in the light most favorable to the verdicts, a rational trier of fact could have found beyond a reasonable doubt that Mr. Casaus committed each of the remaining offenses for which he was convicted. I therefore find that the Court of Appeals' decision was not objectively unreasonable or contrary to clearly established federal law and recommend that Mr. Casaus' remaining claims be denied. *See Torres*, 461 F.3d at 1313; *Yarborough*, 540 U.S. at 5; *Bell*, 535 U.S. at 694; 28 U.S.C. § 2254(d).

## IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Casaus' Petition (Doc. 1) and DISMISS the Petition WITH PREJUDICE.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no o-bjections are filed, no appellate review will be allowed.**